IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REGINALD REX DAVIS, JR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cv-231-WC |
| | ) | |
| BANK OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Seterus's Motion to Dismiss (Doc. 4), Defendant Bank of America's Motion to Dismiss (Doc. 6), Plaintiff's Response (Doc. 16), Defendant Seterus's Reply (Doc. 17), and Defendant Bank of America's Reply (Doc. 18). Upon consideration of Defendants' Motions to Dismiss (Docs. 4 & 6), the court finds that the Motions (Docs. 4 & 6) are due to be GRANTED.

**I.      BACKGROUND**

For purposes of considering Defendants' motions to dismiss, the court presumes that the allegations in the Complaint are true.

On or about January 25, 2008, Plaintiffs contracted a loan from Foundation Financial Group of Atlanta, Georgia, evidenced by a promissory note and secured by a mortgage on the property at 19200 Ethan's Lane, Andalusia, AL 36420.  The mortgage is recorded in the Covington County probate office, book 2008, page 2321.

Under section 5, "Property Insurance," the mortgage agreement states:

**Borrower shall keep the improvements now existing or hereinafter erected on the Property insured** against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, **for which Lender requires insurance** . . . . **If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.** Lender is under no obligation to purchase any particular type of insurance or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. **Any amounts disbursed by lender under this Section 5, shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.**

Ex. 1 to Seterus's Mot. to Dismiss (Doc. 5-1) at 6 (emphasis added).

Sometime in 2012, Bank of America determined that Plaintiffs' property was in a Special Flood Hazard Area as shown on a map published by the Federal Emergency Management Agency ("FEMA"). Bank of America required Plaintiffs to purchase flood insurance on the property.

Upon receiving the flood zone determination, Plaintiffs investigated the matter and, with the help of their local emergency management agency, determined that while portions of their real estate were in the Special Flood Hazard Area, neither their house nor any other improvements were in the flood zone.

2

Plaintiffs contested the flood zone determination and communicated their findings to Bank of America.  Plaintiffs did not purchase flood insurance on the property.  Bank of America purchased flood insurance in the amount of $9,213.75.

On May 8, 2012, Bank of America wrote Plaintiff Reginald Davis to notify him the Bank had purchased insurance in the amount of $9,213.75 for lender placed flood insurance.  In the May 8, 2012 letter, Bank of America stated ". . . our records indicate that your property at the property address above (the "Property") is located in a Special Flood Hazard Area (Flood Area) as shown on the map published by the Federal Emergency Management Agency (FEMA). The Federal Flood Disaster Protection Act of 1973, as amended, and/or the terms of your mortgage/deed of trust, require that flood insurance be purchased and maintained for the entire term of your loan on improvements to your Property (buildings, homes, condominiums and/or mobile homes) located in a flood area."  Compl. (Doc. 1-1) at 3.

Plaintiffs' monthly mortgage payment increased from $1,521.41 to $3,427.89. Plaintiffs failed to make their monthly mortgage payments.

On November 15, 2012, Bank of America sent Plaintiffs a Notice of Intent to Accelerate and Foreclose and indicated that Plaintiffs owed a balance of $6,855.78.

Subsequently, on or about December 1, 2012, Bank of America notified Plaintiffs that it was transferring the servicing rights of Plaintiffs' account to Seterus, Inc.

Upon beginning to service the loan, Seterus notified Plaintiffs that their loan was in default and the amount due was $5,214.96, on or about December 16, 2012.

3

On December 26, 2012, Seterus notified Plaintiffs it had force-placed flood insurance on their property.  In the December 26, 2012 letter, Seterus stated federal law "requires that flood insurance be purchased and maintained on certain mortgage loans. The law applies to loans securing **structures** which, at any time during the term of the loan, are (1) located in Special Flood Hazard Areas (SFHA), as shown on maps published by the Federal Emergency Management Agency (FEMA), and (2) are in a community which participates in the National Flood Insurance Program. We previously determined that your property is located in a SFHA. You are required by the terms of your mortgage and federal law to maintain flood insurance on the property above."  Compl. (Doc. 1-1) at 4 (emphasis in original).

Plaintiffs filed this action in the Circuit Court of Covington County, on March 8, 2013, alleging claims for:  1) violation of the Real Estate Settlement Procedures Act; 2) unjust enrichment/money had and received; 3) breach of covenant of good faith and fair dealing; 4) breach of contract; 5) violation of the Fair Debt Collection Practices Act; and 6) negligent and wanton hiring and supervision.

On April 11, 2013, Defendant Seterus, with Bank of America's consent, removed this action to this federal district court pursuant to 28 U.S.C. § 1446 on the grounds that the court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' complaint includes claims "arising under the Constitution, law or treaties of the United States." Notice of Removal (Doc. 1) at 2.

4

## II.     STANDARD

Defendants filed the instant Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.   In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed."  *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).  The former rule—that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)— has been retired by *Twombly*.  *James River Ins. Co.*, 540 F.3d at 1274.  Thus, the court engages in a two-step approach:   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The court need not accept as true legal conclusions or mere conclusory statements.  *Id.*

### III.    DISCUSSION

#### A.    *Violation of the Real Estate Settlement Procedures Act ("RESPA")*

##### 1.    Section 8 of the RESPA Claim, 12 U.S.C. § 2607

Plaintiffs allege that Defendants' actions violated the anti-kickback provisions of the RESPA, in violation 12 U.S.C. § 2607.  According to Plaintiffs, "Defendants have unlawfully negotiated fees, kickbacks, commissions, or other things of value for themselves and/or their affiliates in connection with the lender-placed flood insurance policy purchased for plaintiffs, pursuant to an agreement understanding with the insurance companies that issues the policies."  Compl. (Doc. 1-1) at 5.  Plaintiffs further allege that "Defendants have unlawfully accepted, either directly or through their affiliates an unearned portion, split, or percentage of the premiums charged for lender-placed flood insurance policies issued to plaintiffs.   Neither Defendants nor their affiliates perform such functions of a typical insurance 'agent,' and neither Defendants nor their affiliates rendered commensurate services for their split or percentage of the premiums charged."  *Id.* at 5-6.

Essentially, Plaintiffs allege that the force-placement of flood insurance constitutes a "settlement service" under the RESPA and that Defendants violated the RESPA by receiving prohibited kickbacks and unearned fees in conjunction therewith.  In moving for dismissal, Defendants contend that the force-placement of flood insurance occurred post-closing and, thus, is not a "settlement service" under the RESPA and falls outside the scope of the RESPA.

6

The RESPA regulates the receipt of fees in connection with a real estate settlement.  Section 2607(a) provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate ***settlement service*** involving a federally related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a) (emphasis added).  Section 2607(b) provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate ***settlement service*** in connection with a transaction involving a federally related mortgage loan other than for services actually performed."  *Id.* § 2607(b) (emphasis added).  For purposes of the RESPA, "the term 'settlement services' includes any service provided in connection with a real estate settlement." 12 U.S.C. § 2602(3).   Plaintiffs point out that "settlement service" is defined in the RESPA regulations to include the "'[p]rovision of services involving hazard, flood, or other casualty insurance.'"  Compl. (Doc. 1-1) at 5 (quoting 24 C.F.R. § 3500.2(b)).  However, the term "settlement" is more specifically defined by the relevant regulation as:  "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. ***This process may also be called 'closing' or 'escrow' in different jurisdictions***."  24 C.F.R. § 3500.2 (emphasis added).[1]

Seterus and Bank of America argue that Plaintiffs fail to state a claim under 12

---

[1] *See Arnett v. Bank of America, N.A.*, 874 F. Supp. 2d 1021, 1040 n.16 (D. Or. 2012) (The second sentence "makes clear that 'settlement' refers to the a [sic] specific event commonly understood, in this jurisdiction, as the 'closing.'").

U.S.C. § 2607 of the RESPA because Plaintiffs do not allege that either Defendant had any involvement with the Loan at the time of closing.  Br. (Doc. 5) at 20; Mot. (Doc. 6) at 5.  Moreover, Seterus points out that "the settlement of Plaintiffs' loan occurred in 2008.  The purchase of flood insurance by defendant, having not occurred until 2012, cannot be construed as being related to that settlement."  Reply (Doc. 17) at 2.

While the RESPA regulations state that the provision of flood insurance constitutes a settlement service, several federal courts have held that fees charged ***after the closing of a loan*** are not deemed to be "in connection with a prospective or actual settlement" and, thus, do not fall within the scope of the RESPA.  *See, e.g.*, *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1048 (N.D. Cal. 2013) ("Because settlement is, in essence, the closing of the loan, a number of courts have found that no RESPA claim is viable based on an allegation that the defendant force placed insurance *after* the closing of the loan."); *Rothstein v. GMAC Mortg., LLC*, 2013 WL 5437648, at *19 (S.D.N.Y. Sept. 30, 2013 (citing line of cases)); *Lane v. Wells Fargo Bank N.A.*, 2013 WL 269133, at *15 (N.D. Cal. 2013) (noting district court decisions finding that "a lender's purchase of force-placed insurance years after the mortgage agreement was signed and the house was bought does not constitute a 'service provided in connection with a real estate settlement.'"); *Morris v. Wells Fargo Bank N.A.*, 2012 WL 3929805, at *15 (W.D. Pa. Sept. 7, 2012) (noting that the "[p]laintiff's contention that the force-placed insurance was regulated by RESPA is misplaced," and "[t]he weight of authority holds that services that are not provided as part of the settlement or closing are beyond

8

the scope of the statute") (citing *McNeary–Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012) (defendants force-placing insurance upon the lapse of the borrower's coverage after the loans had been closed did not constitute the provision of services "in connection with" the closing of the loans) and *Lass v. Bank of America*, 2011 WL 3567280, at *5-6 (D. Mass. Aug. 11, 2011) (same) (collecting cases in support), *vacated on other grounds by* 695 F.3d 129 (1st Cir. 2012)); *Arnett v. Bank of America, N.A.,* 874 F. Supp. 2d 1021, 1040 n.16 (D. Or. 2012) ("RESPA 'does not focus on post-settlement fees paid by mortgagors after they have purchased their houses.'" (quoting *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996)).

Plaintiffs contend they have adequately pled "an unlawful kickback scheme in their complaint." Pls.' Resp. (Doc. 16) at 2. Plaintiffs point the court to *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009) and *In re Carter*, 553 F.3d 979 (6th Cir. 2009) for the proposition that Congress created a private right of action under RESPA Section 8. However, as Seterus points out, the *Alston* and *In re Carter* cases involved fees related to insurance imposed as a condition to the making of the loan and, thus, could be construed as fees related to settlement services. Plaintiffs do not dispute that the flood insurance was force-placed on their property after the close of their mortgage agreement. Accordingly, because Plaintiffs' RESPA claim is based on the force-placement of flood insurance, which occurred years after closing, Plaintiffs' RESPA claim is due to be dismissed for failure to state a claim.

### 2.     Section 10 of RESPA Claim, 12 U.S.C. § 2609

As part of their RESPA claim, Plaintiffs' Complaint also alleges they "are entitled to statutory damages under 12 U.S.C. § 2609(a)(1) for requiring plaintiffs to deposit an excess amount for insurance into their escrow account."   Compl. (Doc. 1-1) at 6. Defendants argue, and Plaintiffs concede, that Section 10 of the RESPA "does not provide plaintiffs a private cause of action."  Pls.' Resp. (Doc. 16) at 2; Def.'s Br. (Doc. 5) (citing *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357 (11th Cir. 2006)).[2]  Accordingly, because Plaintiffs conceded this point, Plaintiff's Section 10 RESPA claim is also due to be dismissed.

### B.     *Violation of the Fair Debt Collection Practices Act ("FDCPA")*

Next, Plaintiff alleges a violation of the FDCPA, arguing that Defendants "were 'debt collectors' as defined in the [FDCPA]."  Compl. (Doc. 1-1) at 10.  Specifically, Plaintiffs allege Defendants made "false, deceptive or misleading" representations in violation of 15 U.S.C. § 1692e and used "unfair or unconscionable means" to collect a debt in violation of 15 U.S.C. § 1692f.  *Id.* at 10-11.

The FDCPA "was intended by Congress to eliminate abusive debt collection practices by ***debt collectors***, and to promote consistent state action to protect consumers

---

[2] *See Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) ("RESPA § 10 states that lenders must provide annual escrow account statements that clearly itemize 'the amount of the borrower's current monthly payment . . . the total amount paid out of the escrow account during the period for taxes, insurance premiums, and other charges . . . , and the balance in the escrow account at the conclusion of the period.' *Id.* § 2609(c)(2)(A). Under § 10, no private right of action exists because 'the Secretary shall assess to the lender or escrow servicer failing to submit the statement a civil penalty.' *Id.* § 2609(d)(1).").

against **debt collection** abuses." *Hennington v. Greenpoint Mortg. Funding, Inc.,* 2009 WL 1372961, at *6 (N.D. Ga. May 15, 2009) (citing 15 U.S.C. § 1692, *et seq.*) (emphasis added). Under the FDCPA:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). "The substantive provisions of the FDCPA that follow § 1692a prohibit 'debt collectors' from taking certain actions. Therefore, whether an individual or entity is a 'debt collector' is determinative of liability under the FDCPA." *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 582-83 (11th Cir. 2012).

### 1.    Whether Defendants are "debt collectors" under the FDCPA

It is undisputed that Defendants are mortgage or loan servicers. In *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458 (11th Cir. 2009), the United States Court of Appeals for the Eleventh Circuit held that "the act of foreclosing on a security interest is not debt collection activity for the purposes of the FDCPA." *Warren*, 342 F. App'x at 460. But in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), a published opinion, the Eleventh Circuit held that "[a] communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a 'debt' even if it is

11

secured." *Reese*, 678 F.3d at 1218.  The Eleventh Circuit later confirmed its holding in *Reese* noting that "*Reese* provides that an entity can both enforce a security interest *and* collect a debt, and constitutes binding precedent on this point." *Birster v. American Home Mortg. Servicing, Inc.*, 481 F. App'x 579, (11th Cir. 2012) (emphasis in original).

However, "the FDCPA does not apply to creditors who seek to collect only what is owed them.  It only applies to third party debt collectors.  Under this definition, 'a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA **when the debt is not in default at the time the mortgage-holder acquires the debt**.'" *Deutsche Bank Trust Co. Americas v. Garst*, 2013 WL 4851493, at *5 (N.D. Ala. 2013) (quoting *Prickett v. BAC Home Loans*, 2013 WL 2248135, at *11 (N.D. Ala. May 21, 2013) (emphasis in original)).  "Under such circumstances, the acquiring party acquires the **debt**, and not just the **security interest,** and so becomes a 'debt collector' under the statute." *Id.* (emphasis in original).

Bank of America moves to dismiss the FDCPA claim arguing that it is "not a debt collector, as defined by the FDCPA." Mot. (Doc. 6) at 8.  The court agrees.  It is undisputed that Bank of America began servicing the loan prior to Plaintiffs' default. Bank of America serviced the loan until transferring the servicing rights to Seterus, on or about December 1, 2012.  Prior to transferring the servicing rights, Bank of America sent Plaintiffs a Notice of Intent to Accelerate and Foreclose on November 15, 2012.  As noted above, a loan servicer can be a "debt collector" under the FDCPA only when it became the servicer of the loan *after* the loan went into default.  *See* 15 U.S.C. §

1692a(6)(F).  Because the loan was not in default at the time Bank of America began servicing the loan, Bank of America is not a "debt collector" under the FDCPA.  Thus, the FDCPA claim is due to be dismissed as to Bank of America.

Plaintiffs had defaulted on the mortgage by the time Seterus began to service the loan on or about December 1, 2012.  Thus, Seterus can be considered a debt collector under both sections § 1692e and 1692f of the FDCPA.

### 2.    Whether Plaintiffs state a claim that Seterus violated the FDCPA.

Seterus argues dismissal is appropriate for two reasons:  1) Plaintiffs failed to allege a false or misleading statement by Seterus as required to state a violation of § 1692e; and 2) because the purchase of insurance was permitted by the mortgage contract and required by federal law, it cannot be unconscionable conduct as required for a violation of § 1692f.  Br. (Doc. 5) at 20.

In order to survive a motion to dismiss, Plaintiffs must state facts which, when taken as true, establish that Seterus violated the FDCPA.  In support of their FDCPA claim Plaintiffs allege as follows:

> The acts and omissions of defendants and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to the following:
>
> a.    The collection of unneeded flood insurance payments is a false, deceptive or misleading representation under § 1692e.
>
> b.    The collection and the assertion of flood insurance was unneeded and is a false, deceptive or misleading representation regarding the character, amount and legal status of the mortgage debt under § 1692e(2).

c.      The collection and the assertion of flood insurance was unneeded and is a false, deceptive or misleading representation that threatens to take an[] action that cannot legally be taken, under § l692e(5).

d.      The collection of insurance and the assertion insurance i[s] needed is a false or misleading representation that represents the insurance is needed or authorized pursuant to the United States under § 1692e(9).

e.      The collected insurance and the assertion of insurance is an unfair or unconscionable means to collect a debt under § 1692f(1) as this is collection of an amount of money not authorized by the mortgage or permitted by law.

f.      The collection of insurance is an unfair or unconscionable means to collect a debt under § 1692f(6) as it had the effect of illegally disabling plaintiffs' property whereby they could not refinance their property.

Compl. (Doc. 1-1) at 10-11.

Plaintiffs oppose Defendants' motions to dismiss, by arguing that "[t]he remainder of the Defendants' arguments requires this court to consider facts and evidence and treat Defendants' motion to dismiss as a one for summary judgment at this early stage in the case.  Plaintiffs['] claims under the Fair Debt Collection Practices Act assert the forced placements was false and deceptive and therefore violative of the FDCPA.  Defendant Seterus states in their brief that a factual consideration of the issues is need[ed] to determine plaintiffs' claims."  Resp. (Doc. 16) at 7.  Essentially, Plaintiffs argue that Defendants' motions to dismiss should be denied because Defendants' arguments for dismissal would require a factual inquiry of this case, which is inappropriate for a motion to dismiss.

14

Plaintiffs' claims hinge on the premise that Defendants improperly force placed flood insurance on their property because they incorrectly determined the property was in a flood zone. If Defendants were justified in force placing flood insurance on Plaintiffs' property, then Plaintiffs cannot state a claim. Thus, whether Defendants were justified in force placing flood insurance on Plaintiffs' property at Plaintiffs' expense is a threshold determination. Taking Plaintiffs' factual allegations as true, this determination can be made on the pleadings because it involves interpretation of the mortgage agreement, which is a purely legal determination. *See, e.g.*, *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." (citations omitted)).

It is undisputed that Section 5 of the mortgage agreement explicitly authorizes force-placement of insurance if required by the Lender and at Borrower's expense.[3] Plaintiffs' only contention is that Defendants' erred in determining that their property was in a flood zone. Even assuming the FEMA map incorrectly placed Plaintiffs' property in a flood zone, Defendants did not use "false, deceptive or misleading representations" nor did they use "unfair or unconscionable means to collect a debt" when they represented that a FEMA map showed Plaintiffs' property to be in a flood zone and that the NFIA

---

[3] "**Borrower shall keep the improvements now existing or hereinafter erected on the Property insured** against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, **for which Lender requires insurance** . . . . **If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.**" Ex. 1 to Seterus's Mot. to Dismiss (Doc. 5-1)

required Plaintiffs to purchase flood insurance.[4]  Plaintiffs' disagreement with the flood zone determination does not provide Plaintiffs with a vehicle to allege a violation of the FDCPA.  Accordingly, the court finds that Plaintiffs have failed to properly plead a violation of the FDCPA against either Bank of America or Seterus.  Thus, Plaintiffs failed to state a claim upon which relief can be granted and their FDCPA is also due to be dismissed.

### C.   *State Law Claims*

Plaintiffs also raise state law claims for unjust enrichment, breach of the covenant of good faith and fair dealing, breach of contract, and negligent and wanton hiring and supervision.  *See* Compl. (Doc. 1-1) at 6-11.  Defendants argue that these state law claims are preempted by the National Flood Insurance Act ("NFIA").  Br. (Doc. 5) at 8-11; Mot. (Doc. 6) at 7-8.  Because these claims are state law claims, pled as state claims, and rely solely on Alabama law, the court would need to exercise supplemental jurisdiction to consider these state claims.

The exercise of this court's supplemental jurisdiction would be inappropriate.  The exercise of this jurisdiction is discretionary.  *United Mine Workers v. Gibbs*, 383 U.S.

---

at 6 (emphasis added).

[4] "The National Flood Insurance Act requires regulated lenders of mortgage real-estate loans to determine if the borrower's property is located in a special flood-hazard area and, if so, to notify the borrower that he or she must obtain an appropriate amount of flood insurance."  *Clark v. AmSouth Mortg. Co.*, Inc., 474 F. Supp. 2d 1249, 1252 (M.D. Ala. 2007) (citing 42 U.S.C. § 4012a (e)(1).  If a borrower fails to purchase the required insurance within 45 days after notification, "the lender or servicer for the loan shall purchase the insurance on behalf of the borrower and may charge the borrower for the cost of premiums and fees incurred by the lender or servicer for the loan in purchasing the insurance." *Id.* (citing § 4012a (e)(2)).

715, 726 (1966).  Because the court will grant Defendants' motions to dismiss "on the federal claims, which were the basis for removal, this court believes that the best course is to remand these remaining, unresolved state-law claims back to state court for resolution, pursuant to 28 U.S.C. § 1367(c)(3)."  *Clark v. AmSouth Mortg. Co., Inc.*, 474 F. Supp. 2d 1249, 1253 (M.D. Ala. 2007).  *See also* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction where all claims over which it had original jurisdiction have been dismissed); *McCoy v. Webster,* 47 F.3d 404, 408 & n. 4 (11th Cir. 1995) (same).

## IV.   CONCLUSION

For the reasons discussed above, it is ORDERED that:

1.      Defendants' Motions to Dismiss (Docs. 4 & 6) are GRANTED in PART and DENIED in PART;

2.      Defendants' Motions to Dismiss (Docs. 4 & 6) are GRANTED as to Plaintiffs' federal claims;

3.      Plaintiffs' federal claims, brought pursuant to the Real Estate Settlement Procedures Act and the Fair Debt Collection Practices Act, are DISMISSED;

4.      Defendants' Motions to Dismiss (Docs. 4 & 6) are DENIED as to Plaintiffs' state law claims; and

5.      Plaintiffs' remaining state law claims are REMANDED back to the Circuit Court of Covington County, Alabama.

A separate judgment shall issue.

17

Done this 17th day of October, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE